IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Diane Elizabeth Singletary,        )        Civil Action No. 8:13-cv-1848-TMC-JDA
                                   )
                 Plaintiff,        )        **REPORT AND RECOMMENDATION**
                                   )        **OF MAGISTRATE JUDGE**
         vs.                       )
                                   )
Carolyn W. Colvin,                 )
Commissioner of Social Security,   )
                                   )
                 Defendant.        )

        This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is

recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

        On September 30, 2010, Plaintiff protectively filed an application for DIB, alleging

an onset of disability date of January 1, 2009 [R. 151–57.]  At the hearing before the ALJ,

the onset of disability date was amended to July 31, 2010.   [R. 39–40.]  The claim was

denied initially on December 17, 2010 [R. 82–83] and was denied on reconsideration by

the Social Security Administration ("the Administration") on July 28, 2011 [R. 88–89].

Plaintiff requested a hearing before an administrative law judge ("ALJ") and on October 1,

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent
to disposition by a magistrate judge.

2012, ALJ Rosanne P. Gudzan conducted a de novo video hearing on Plaintiff's claims with Plaintiff appearing in Myrtle Beach, South Carolina and the ALJ appearing in North Charleston, South Carolina.   [R. 34–64].

The ALJ issued a decision on November 9, 2012, finding that Plaintiff has not been under a disability as defined by the Act from July 31, 2010, through the date of the decision.   [R. 18–28.]   At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through September 30, 2013, and had not engaged in substantial gainful activity since July 31, 2010, the alleged onset date.  [R. 20, Findings 1 & 2.]   At Step 2, the ALJ found Plaintiff had the following severe impairments: generalized anxiety disorder; sexual abuse as a child; borderline intellectual functioning; bipolar disorder; borderline personality disorder; and asthma.  [R. 20, Finding 3.]  At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 20, Finding 4.]  The ALJ specifically considered Listings 12.02, 12.04, 12.06, and 12.08 with respect to Plaintiff's mental impairments, and Listing 3.03 with respect to Plaintiff's asthma.  [R. 21–22.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained

> the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she must avoid concentrated exposure to respiratory irritants such as fumes, odors, dust and gases; and she can understand, remember and carry out short, simple

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> instructions and tasks for at least 2 hours at a time; occasionally interact with co-workers, supervisors, and the public but do no work in crowds or in close proximity to or in coordination with co-workers; and adapt to changes in a routine setting. She should work primarily with things rather than people and production demands should consist of having assigned tasks to complete by the end of the workday or shift.

[R. 22, Finding 5.] Based on this RFC finding, at Step 4, the ALJ determined Plaintiff could not perform her past relevant work as a certified nurse assistant, stock clerk, fast food cook, grocery checker, or housekeeper [R. 27, Finding 6]; but based on her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform [R. 27, Finding 10].  On this basis, the ALJ found Plaintiff has not been under a disability, as defined by the Act, from July 31, 2010, through the date of the decision.  [R. 28, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision and the Council declined review.  [R. 1–5, 6–10.][3]  Plaintiff filed this action for judicial review on July 5, 2013.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff's arguments, while not clearly articulated, appear to suggest that the ALJ's decision is not supported by substantial evidence and the ALJ applied incorrect law thus requiring a remand for the following reasons:

1.    the ALJ erred in evaluating the severity of Plaintiff's mental impairments under Listing 12.00 and failed to comply with the special technique for evaluating mental impairments [Doc. 16 at 1–3]; and,

---

[3]The Appeals Council initially denied review of the ALJ's decision on April 17, 2013.  On April 30, 2013, however, the Appeals Council set aside its earlier decision in order to consider additional information provided to the Appeals Council by Plaintiff, and again it denied review. [*See* R. 4, listing additional evidence considered by the Appeals Council.]

2.      the ALJ failed to provide the vocational expert ("VE") with a hypothetical that included all of the limitations of Plaintiff's RFC, and the VE failed to produce proper evidence of jobs Plaintiff could perform [*id*. at 2–5].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that the ALJ

1.      properly evaluated Plaintiff's mental impairments pursuant to the special technique set forth in the Agency regulations and properly determined Plaintiff's RFC [Doc. 17 at 5–7]; and,

2.      made a proper Step 5 determination that there was other work existing in significant numbers that Plaintiff could perform [*id*. at 8].

The Commissioner asks the Court to uphold its decision.  [*Id*. at 9.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

4

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

6

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. §

405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by

amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of

Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been
superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the
requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*,
*Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No.
TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.
2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807
F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not

7

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches Step 5, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

9

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

10

### D.    Past Relevant Work

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    Other Work

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.   Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th

13

Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

14

V.     **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

15

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Evaluation of Mental Impairments**

Plaintiff argues the ALJ failed to consider the findings of Dr. Ritz in considering Plaintiff's mental limitations and did not conduct a proper listing analysis under Listing 12.00 by failing to consider "whether the duration and functional effects of the long term [mental] conditions are of equal severity."  [Doc. 16 at 2.]  Plaintiff further argues the ALJ failed to comply with the special technique for evaluating mental impairments.  [*Id*. at 3.]

17

*Special Technique*

At Step 2 of the five-step evaluation process, the ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments.  20 C.F.R. § 404.1520a(a).  Under the special technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to determine if the claimant has a medically determinable mental impairment.  *Id.* at § 404.1520a(b)(1).  Then the ALJ rates the claimant's degree of functional limitation resulting from the impairment.  *Id.* at § 404.1520a(b)(2).  The rating determines whether the claimant's impairment is severe or not severe.  *Id*. at § 404.1520a(d).

To rate a claimant's degree of functional limitation, the ALJ considers four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  *Id.* at § 404.1520a(c)(3); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C.  Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).  Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).  *Id.*  Episodes of decompensation "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system."  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).  The regulations define repeated episodes

of decompensation, each of extended duration, as meaning three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *Id*. However, if a claimant has experienced "more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." *Id.*

To arrive at a rating, the ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id*. at § 404.1520a(c)(2); *see id*. Pt. 404, Subpt. P, App. 1, § 12.00C–H. The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme. *Id.* at § 404.1520a(c)(4). For the fourth functional area—episodes of decompensation—the ALJ uses a four-point scale: none, one or two, three, and four or more. *Id*. If the ALJ rates the claimant's degree of limitation as none or mild in the first three functional areas and none in the fourth functional area, the ALJ will usually conclude the claimant's impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *Id.* at § 404.1520a(d)(1).

### *ALJ's Evaluation*

At Step 2, the ALJ made a finding that Plaintiff's combination of impairments, which included her mental issues, are severe. [R. 20.] Then, the ALJ conducted a listing analysis

19

with respect to Plaintiff's mental impairments under Listings 12.02, 12.04, 12.06, and

12.08, finding that neither "paragraph B" nor "paragraph C" criteria were met.  [R. 21.]  In

evaluating the four broad functional areas, as described above, ALJ found as follows:

> In activities of daily living, the claimant has mild restriction. In
> July 2011, the claimant reported that she could clean the home
> a little bit, cook sometimes and had no difficulties dressing.
> Bathing functions were intact and she drove short distances.
> (Exhibit B14F) Treatment notes also document that the
> claimant spends time playing games on the internet. (Exhibit
> B3F) At the hearing, the claimant testified that she does
> laundry if she remembers, does a little cooking and drives to
> town to take her children to the doctor. As such, the claimant
> has no more than mild restriction in activities of daily living.
>
> In social functioning, the claimant has moderate difficulties. In
> July 2011, the claimant reported that she did not like crowds of
> people and stayed in the house often. She stated that she had
> no friends but a supportive family. She preferred being alone
> and felt uncomfortable going out of the home. (Exhibit B14F)
> Treatment notes also document that DSS has been involved
> with the claimant's children as a result of her mental
> conditions. She also has a history of drug dependence but
> testified that this condition has been in remission for several
> years.  As such, the claimant has moderate difficulties in social
> functioning.
>
> With regard to concentration, persistence or pace, the claimant
> has moderate difficulties. In July 2011, the claimant reported
> that her memory was getting worse every day and she was
> forgetting tasks. However, she was still able to cook
> sometimes and drive short distances.  Memory functions were
> found to be in the mildly deficient range. (Exhibit B14F) In
> January 2012, the claimant was unable to perform serials 3s.
> (Exhibit B18F) At the hearing, the claimant testified that she
> has memory problems and does not say things right. As such,
> the claimant has moderate difficulties with regard to
> concentration, persistence and pace.
>
> As for episodes of decompensation, the claimant has
> experienced no episodes of decompensation, which have been
> of extended duration.

[R. 21.]  Based on those findings, the ALJ determined Plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration; thus, the ALJ concluded the "paragraph B" criteria are not satisfied.  [*Id*.]  The ALJ also concluded that the "paragraph C" criteria were not met.  [*Id*.]

With respect to Plaintiff's alleged episodes of decompensation, the ALJ noted that Plaintiff attempted suicide in November 2011 and went to the hospital but was not committed because there were no beds available [R. 23]; on September 10, 2010, Plaintiff reported taking an overdose of Ativan two weeks earlier but did not go to the emergency room; and, she has made other attempts on her life [*id*.].  Besides the emergency room visit in November 2011 for depressed mood/suicidal ideation, the ALJ found the medical evidence of record failed to document any further hospitalizations. [R. 24.]

Additionally, with respect to the psychological evaluation of Plaintiff performed by Douglas R. Ritz, Ph.D. ("Dr. Ritz") on January 27, 2012, at the request of the Department of Social Services[7], the ALJ acknowledged that Plaintiff "was assessed with bipolar disorder and borderline intellectual functioning and given an estimated GAF score of 50, indicating serious symptoms or impairment in social, occupational or school functioning (Exhibit B18F);" however, the ALJ also noted that, since that evaluation, Plaintiff's mental health conditions have been managed by her primary care physician at Black River Healthcare.  [R. 25.]  At the time of her evaluation by Dr. Ritz, Plaintiff was reportedly not taking her medication(s).  [R. 419.]  The ALJ noted that the evidence of record documents

---

[7]The Department of Social Services got involved due to allegations of child neglect as a result of Plaintiff failing to take her medication which was, in turn, influencing her behavior.  [R. 419.]

21

a long history of non-compliance with treatment and prescription medication regimen. [R. 23.] Additionally, in November 2010, Plaintiff called her counselor requesting that her case be closed as she no longer needed mental health services. [R. 24.] Plaintiff refused to come in for evaluation; as such, her case was closed effective November 18, 2010. [*Id*. *citing* Exhibits B3F and B23F.] The evidence of record does not document any further mental health treatment or counseling.

### *Discussion*

The Court finds no error in the ALJ's evaluation of Plaintiff's mental impairments. After the ALJ determined that Plaintiff's combination of impairments is severe at Step 2, she properly completed the special technique which indicated Plaintiff's mental impairments did not meet the severity requirements of the listings. Although Plaintiff contends that the ALJ failed to consider Dr. Ritz's findings regarding Plaintiff's mental limitations, that is not the case. The ALJ referred specifically to certain portions of Dr. Ritz's report, including Plaintiff's mental condition such as her need for psychiatric treatment and her bipolar disorder. [R. 25, *citing* Exhibit B18F (Dr. Ritz's report); R. 32.] The ALJ found it significant that Dr. Ritz noted during the MMPI-2 testing Plaintiff was responding in a manner that was inconsistent and could be a sign of exaggeration of symptoms. [R. 25; R. 422.] Additionally, the ALJ's decision is supported by, and she gave significant weight to, the Psychiatric Review Technique [R. 348–61] and the Mental RFC [R. 370–72] performed on December 16, 2010, by Holly Hadley, Psy.D. ("Dr. Hadley") and the Psychiatric Review Technique [R. 396–409] and Mental RFC [R. 410–12] performed on July 19, 2011, by Camilla Tezza, Ph.D. ("Dr. Tezza"). Where there is conflicting evidence regarding a claimant's limitations, the Commissioner must determine the weight

22

of the evidence.  It is not the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence, and, in the instant case, substantial evidence supports the ALJ's determination of Plaintiff's mental limitations and whether they equal a listing.  *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012).

Moreover, while Plaintiff takes issue with the ALJ's assessment with respect to the nature and severity of Plaintiff's "episodes of decompensation," Plaintiff does not direct the Court to any evidence of record, excluded from consideration by the ALJ, which would require remand.

**Step Five Analysis**

Plaintiff argues the ALJ erred by failing to include limitations regarding Plaintiff's need to have work with "single, repetitive tasks without special supervision" in the hypothetical to the VE.  [Doc. 16 at 4.]  Additionally, the Plaintiff argues the VE "was completely unable to provide numbers of the job which met the hypothetical of limiting contact with co-workers." [*Id*.]  Lastly, Plaintiff argues the "VE job numbers did not clearly limit the janitor position to the one he ultimately described—performed after hours, in an office, where all office personnel have left and where the performance standard is to finish in the 8 hour day." [*Id*. at 5.]

*VE's Testimony*

The colloquy between the ALJ and the VE with respect to jobs available in the regional and national economy that Plaintiff can perform went as follows:

*ALJ*:  I would ask you to assume that you have a hypothetical individual of the claimant's age, education, and past work experience who has no exertional

limitations, but has the following non-exertional limitations. The individual should avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, and gases.  The individual can understand, carry out, and remember short, simple instructions and tasks for at least two hours at a time.  The individual can occasionally interact with coworkers, supervisors, and the public, but do no work in crowds, C-R-O-W-D-S, or in close proximity to or in coordination with coworkers.

The individual can adapt to changes in a routine work setting. The individual should work primarily with things rather than people. And production demands should consist of having assigned tasks to complete by the end of a work day or shift.

In your opinion, Mr. Wilson, could such an individual do this past work?

*VE:*    No, Your Honor.

. . .

*ALJ:*   Okay. Are there other unskilled jobs that such an individual could perform?

*VE*:    Yes, Your Honor.

*ALJ*:   And do you have examples?

*VE:*    I do.  Addresser, SVP 2, unskilled, sedentary, South Carolina 500, national economy 96,330, DOT 209.587-010. Order food clerk, SVP 2, unskilled, sedentary, South Carolina 1,790, national economy 215,390, DOT 209.567-014. Small products assembler, SVP 2, unskilled, light, South Carolina 1,570, national economy 235,910, DOT 706.684-022.

*ALJ*:   Are you able to identify any medium jobs? Do you have an example of a medium job?

*VE*:    Yes, Your Honor. Janitor, SVP 2, unskilled, medium, South Carolina 26,430, national economy 2,068,460, DOT 381.687018.

. . .

*ALJ*:   All right. My second question was if you had this individual with my first question, but you assumed the individual could not maintain attention and concentration on work tasks for at least two hours at a time due to interruptions from psychologically based symptoms. And, Mr. Wilson, what was your answer?

24

*VE*:     No jobs.

[R. 56 –58.]

Counsel for Plaintiff ("Atty") directed the following questions to the VE:

*Atty*:     If I could ask a couple of questions with regard to the four jobs, Mr. Wilson. The addresser job, okay, can you tell me what that job --what does the description say that job is?

*VE*:     An addresser addresses by hand or typewriter envelopes, cards, advertising literature, packages, or similar items for mailing, and may sort mail.

*Atty:*     Okay. And the order food clerk, what is the description of that job?

*VE*:     That is a person who would receive a call from somebody at a hotel or a motel for room service, take the order, not face to face.

*Atty*:     Okay. And but would have to prepare the order?

*VE*:     No. They would write the order down and give it to someone in a kitchen to prepare, and then go back to their station.

*Atty*:     Okay. And that meets the working without interaction? I mean, you'd have to interact with the public and the coworkers.

*VE*:     Interaction with coworker would be minimal, and it would be generally by phone with the public. Those are very sedentary, low-stress positions.

. . .

*Atty*:     Okay. And the assembler job, what is the description of that?

*VE*:     Performs any combination of the following repetitive tasks on assembly line to mass produce small products, such as ball bearings, subassemblies: frequently work at a bench, fastens, fit on an assembly system.  Basically, would put small items together.

*Atty*:     Okay. And by its nature, it sounds as if you were surrounded by coworkers, and, as if there is some immediate production requirement as the parts are moving by.

*VE*:     It can be production line, or it can be in an individual setting to put things together, too.

. . .

*Atty*:   Okay. If it were the individual setting, would that not reduce the numbers you gave?

*VE*:    It would reduce, but there are still positions where somebody can put things together, not necessarily on an assembly line.

*Atty*:   Okay. Can you tell us how distinctly or how much it would reduce the numbers you provided to go to that type of —

*VE*:    I don't have that --I don't know how that would directly because it just gives me that category.

*Atty*:   Okay.

*VE*:    I have observed people doing the positions on an assembly line and privately. I don't know the difference in that setting.

*Atty*:   Am I understanding that you can't give us a number that would represent the single setting?

*VE*:    No. It's not broken down to that specific, but I have observed the positions.

*Atty*:   Okay. And with regard to the janitor position that you gave us from the DOT, can you tell us what that job description is?

*VE*:    It is a general janitor. It would be in a commercial establishment, after hours, usually by oneself, cleaning an office or a building.

[R. 59–61.]

After this exchange, Plaintiff's attorney attempted to determine whether any loss of concentration or any forgetting of the task would result in an improper and unacceptable performance of the janitor job. [R. 61.] The VE could not answer the question, however, because Plaintiff's counsel could not quantify the frequency of the interruptions or the percentage of the day impacted by the interruptions. [*See* R. 61–63.] The VE indicated

26

that being off-task on a frequent basis would lead to writeups regarding the janitor job.  [R. 63.]

### *Discussion*

The Court finds that the ALJ made a proper Step 5 determination that other work exists in significant numbers that Plaintiff could perform, and Plaintiff's arguments challenging the VE's testimony are without merit.  While Plaintiff argues the ALJ erred by failing to include limitations regarding Plaintiff's need to have work with "single, repetitive tasks without special supervision" in the hypothetical to the VE, the limitation to "short, simple instructions and tasks" was included in the RFC and in the hypothetical to the VE. The Fourth Circuit has held that a hypothetical question is unimpeachable if it "adequately reflect[s]" an RFC for which the ALJ had sufficient evidence.  *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).  Plaintiff does not specifically challenge the ALJ's RFC findings and, further, she fails to explain why she cannot perform the jobs without the additional limitation to single and repetitive tasks.  Accordingly, the Court finds no error in the ALJ's failure to include these additional limitations in the hypothetical to the VE.

Regarding Plaintiff's concerns about particular jobs identified by the VE, the fact that the VE "was completely unable to provide numbers of the [assembler] job which met the hypothetical of limiting contact with co-workers" is unpersuasive because the VE testified that she observed people doing the assembler positions on an assembly line and privately. Plaintiff does not contend the VE's testimony conflicts with the DOT.  Additionally, courts have held that professional experience or knowledge based on personal observation is a reasonable explanation under these circumstances.  *See, e.g., Thornsberry v. Astrue*, C/A No. 4:08-4075-HMH-TER, 2010 WL 146483, at *16–17 (D.S.C. Jan. 12, 2010) (finding no

27

error when VE testified that based on his professional knowledge, claimant could work certain jobs although the DOT did not provide sit/stand option); *Hare v. Astrue*, No. 7:08-CV-36-FL, 2009 WL 873993, at *27 (E.D.N.C. Mar. 24, 2009) (VE provided reasonable explanation, for purposes of S SR 00–4p, when he stated that the cited jobs would provide sit/stand option based on his professional experience).

Further, Plaintiff's argument that the "VE job numbers did not clearly limit the janitor position to the one he ultimately described" is not a basis for remand. First, Plaintiff fails to allege any conflict between the VE's testimony and the DOT. Second, Plaintiff fails to argue that she could not perform the janitor job as described by the VE. In any instance, the regulations do not indicate that the VE or the ALJ are required to provide DOT numbers, but rather that the ALJ may "take administrative notice of reliable job information" such as that information contained in the DOT. *See* 20 C.F.R. § 404.1566(d); *see also Taylor v. Astrue*, No. 4:07-CV-160-FL, 2009 WL 50156, at *12, n. 6 (E.D.N.C. Jan. 7, 2009).

Moreover, Plaintiff apparently does not contend before this Court that she could not perform the jobs of addresser or order food clerk, both of which the ALJ relied on as jobs Plaintiff could perform. Based on the above, the Court finds that the ALJ did not err in relying on the VE testimony, and substantial evidence supports the ALJ's Step 5 determination that there are jobs that exist in significant numbers that Plaintiff can perform.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

28

IT IS SO RECOMMENDED.


s/ Jacquelyn D. Austin
United States Magistrate Judge

July 31, 2014
Greenville, South Carolina